Marty MANLEY, doing business as Manley Construction, Appellant,

v.

George J. ATHAN and Cheryl L. Athan, Respondents.

No. WD 51069.

Missouri Court of Appeals, Western District.

Feb. 20, 1996.

Thomas Eugene Hankins, Deborah Conklin, Gladstone, for appellant.

Clifford Cohen, Keith Shuttleworth, Kansas City, for respondents.

Before ELLIS, P.J., and HANNA and SPINDEN, JJ.

SPINDEN, Judge.

Marty Manley, doing business as Manley Construction,[1] sued George J. and Cheryl L. Athan for breaching a real estate and building contract. The circuit court granted summary judgment for the Athans, and Manley appeals. We affirm.

On March 23, 1994, Manley and the Athans signed a document entitled "Real Estate Sale and Building Contract." The document indicated that Manley agreed to sell to the Athans "Lot 35, BRIARCLIFF WEST" and to construct "a single-family house and other improvements (collectively, 'the residence')[.]" The document provided that the Athans would "choose plans for the residence to be prepared by an Architect of [their] choice." It said that specifications for the house would be "prepared by [Manley] and [the Athans], with the approval of the [the Athans]." These house plans and specifications, the agreement provided, were to be incorporated into the contract. The Athans agreed to pay Manley a $30,000 builder's fee and to pay all construction costs and fees. The Athans agreed "to obtain [their] plans and otherwise proceed in a timely fashion so as to permit [Manley] to complete the residence on or before March 30, 1995." The document provided that if the Athans defaulted, Manley could declare the contract inoperative and the Athans would be obligated to pay Manley $30,000 as liquidated damages.

In April or May 1994, George Athan notified Manley that he and his wife had decided not to build. The Athans had not met with an architect or had any plans prepared. Manley demanded payment of the $30,000 builder's fee, and the Athans refused to pay it.

Manley sued the Athans on July 19, 1994. Manley alleged that he was entitled to $30,000 as damages under the liquidated provision of the contract and that his actual damages were $30,000. The Athans filed a motion for summary judgment on March 2, 1995, and on May 3, 1995, the circuit court, without stating its reasons, granted the Athans' motion. Manley contends on appeal that the trial court erroneously granted summary judgment. We disagree. Manley and the Athans did not have the "meeting of the minds" necessary for a contract. As the Athans argue, they had not reached an agreement with Manley on the design or the size of the house, so the contract lacked essential terms and was too vague to enforce as a matter of law.

■ "For a contract to be valid and enforceable the nature and extent of its obligations must be certain.... If the essential terms of the contract are reserved for future determination by the parties there can be no valid agreement." *Around the World Importing, Inc. v. Mercantile Trust Company, N.A.,* 795 S.W.2d 85, 90 (Mo.App.1990).

In this case, the contract was not only uncertain, it had no details of the contract's primary subject matter. Manley had agreed to sell the Athans *a* house, of some unknown size or shape, on Lot 35. Manley could not be certain that what he thought he was agreeing to construct was what the Athans thought they were agreeing to buy. Neither knew what the Athans wanted, except that it was to be a house with an "open floor plan." The house's specifications would have to await the Athans' consultation with an architect. They agreed that after the Athans decided what the size and shape of their new house was going to be, the Athans would return to work out the construction details with Manley. Manley was assuming that the Athans would return with plans for a house that he was willing, and able, to arrange for construction.

■ This was little more than a contract to contract. By leaving specifications and other essential terms to future agreement, the purported contract was not valid. "Ne-

---

1. We shall refer to Marty Manley and Manley Construction interchangeably as Manley.

gotiations or preliminary steps towards a contract do not constitute a contract." *Gateway Exteriors, Inc. v. Suntide Homes, Inc.*, 882 S.W.2d 275, 279 (Mo.App.1994). What if the parties, both acting reasonably and in good faith, could not agree on the house's specifications? For example, was Manley obligated to build the house even in the case that the Athans wanted to employ some unique architectural arrangement which Manley did not feel capable of building? Did the "agreement's" mandate that the parties later agree on details give Manley authority to veto any plan he did not want to construct? We doubt that the Athans believed that to be the case. The contract did not contemplate this contingency. It merely mandated that the parties would agree.

■ Manley relies on *Phillips Petroleum Company v. Rau Construction Company*, 130 F.2d 499 (8th Cir.), *cert. denied*, 317 U.S. 685, 63 S.Ct. 260, 87 L.Ed. 549 (1942), for the proposition that "a contract will not be found to be lacking in specificity simply because *exact* plans are not defined at the time of the contract." [2] In *Phillips Petroleum*, the court held:

> Absolute certainty in contracts of this character is not required. It is sufficient that the contract is definite enough to enable the parties to perform it and to determine when performance has been obtained. Any uncertainty in the present contract was removed as the plans were delivered and the individual units of construction completed.

*Id.* at 501. The contract in that case, however, had been performed. Indefiniteness can be cured by performance. R.A. LORD, 1 WILLISTON ON CONTRACTS § 4.18 (4th ed.1990).

The *Phillips Petroleum* case is a far cry from Manley's case. Not only was his agreement with the Athans uncertain, the *only* certainty of their agreement was the lot on which the house would be built. Building on Lot 35 was not entirely certain because Manley did not own it and was assuming (although he believed it a safe assumption) that he could obtain title to pass to the Athans.

We conclude that the purported agreement between the parties was too uncertain to enforce as a matter of law. Hence, we affirm the circuit court's granting summary judgment for the Athans.

All concur.